**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MERITAGE HOMES OF TEXAS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.: 23-2931 |
| | § | |
| GYSBERT AND QI DE VILLIERS, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES, Plaintiff, Meritage Homes of Texas, LLC ("Meritage"), and files its Original Complaint against Gysbert and Qi de Villiers ("Defendants"), seeking declaratory judgment, and would respectfully show as follows:

**I.
INTRODUCTION**

1. Meritage seeks declaratory relief regarding the enforceability of the arbitration provision contained in the New Home Purchase Agreement (the "Agreement") between it and Defendants. Specifically, Meritage requests a determination that the agreement to arbitrate is valid and enforceable. More specifically, Meritage seeks declaratory relief that the arbitration provision's (1) time constraints on the parties' case-in-chief to two (2) days for each party are valid and enforceable; (2) the limits on discovery during the arbitration are valid and enforceable; (3) a record of the final hearing as permitted by Rule 22(k) of the JAMS Comprehensive Arbitration Rules & Procedures is valid and enforceable; (4) the right to invoke the JAMS Optional Arbitration Appeal Procedure if the final award is in excess of $100,000 is valid and enforceable; and (5) the cost sharing provisions for the stenographic record and the JAMS Optional Appeal procedure is valid and forceable.

2. The record will show that the parties agreed that the issue of arbitrability is required to be considered by this Court and jurisdiction is reserved exclusively to this Court. The record will also show that all applicable provisions of the arbitration agreement are valid and enforceable and that Defendants agreed to the arbitration terms twice—once when the Agreement was first executed and again when the parties negotiated and agreed to an arbitrator. Meritage seeks relief from the Court to finally ensure Defendants will comply with the Agreement.

## II.
## PARTIES AND SERVICE

3. Plaintiff, Meritage Homes of Texas, LLC, is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.

4. Defendants, Gysbert and Qi de Villiers, are residents of Richmond, Fort Bend County, Texas and may be served with process at *17722 Vendres Crossing, Richmond, Texas 77407*, or wherever they may be found.

## III.
## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are citizens of different States. As discussed below, Defendants asserted claims in the State Court Lawsuit and the Arbitration for damages in excess of $75,000.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendants reside in this district. In addition, venue is proper as the parties consented by agreement to jurisdiction in this district pursuant to Section 16.D.iii of the Agreement.

## IV.
## FACTUAL ALLEGATIONS

**A.     Factual Background**

7.     Meritage is in the business of home construction. Meritage acquired title to the lot located at 17722 Vendres Crossing, Richmond, Texas 77407 (the "Property"). Defendants later purchased the Property from Meritage and selected home plans and custom selections and options as memorialized in the Agreement. A true and correct copy of the Agreement is attached hereto as ***Exhibit A***.

8.     After taking possession of the residence, on or about September 15, 2021, Defendants filed suit against Meritage in the 400th Judicial District Court of Fort Bend County, Texas, Cause No. 21-DCV-28025 (the "State Court Lawsuit"). *See **Exhibit B***. Then, on or about July 29, 2022, Defendants submitted their arbitration demand with Judicial Arbitration and Mediation Services ("JAMS") (the "Arbitration"). *See **Exhibit C***.

9.     On or about September 26, 2022, the parties agreed to an arbitrator not affiliated with JAMS. Parties also agreed that the JAMS Comprehensive Arbitration Rules and Procedures ("JAMS Rules") and contractually stipulated procedures governing the arbitration process as set forth in Section 16.D of the Agreement still govern even though the Arbitration would be administered privately. *See **Exhibit D***.

10.     On or about July 24, 2023, Defendants filed a Motion for Determination Regarding Unconscionability of Arbitration Clause Provisions in the State Court Lawsuit. *See **Exhibit E***.

**B.     Material Provisions of the Agreement**

11.     The parties agreed to arbitrate any post-closing disputes. Specifically, Section 16.D.iii of the Agreement states: "[Defendant] and Meritage hereby agree that from and after the Closing, any dispute, claim, or controversy between them and/or any of their respective successors

in interest shall be determined by binding arbitration, as provided by the Federal Arbitration Act (9 U.S.C. Section 1 et seq) and in accordance with the terms and conditions of this Agreement…" *See* **Exhibit A** at Section 16.D.iii. A "dispute, claim, or controversy" is defined as "all disputes, claims, or controversies of any time or nature whatsoever involving [Defendants] and Meritage, including, but not limited to: (a) those arising from or involving the condition of the Home and/or Meritage's construction of the Home; [or] (b) those arising from or related in any way to this Agreement…". *Id.*

12. The parties further agreed that, subject to the limitations set forth in the Agreement, "the arbitration shall be administered by Judicial Arbitration and Mediation Services ("JAMS") pursuant to its Arbitration Rules and Comprehensive Procedures, including, but not limited to, the expedited procedures of JAMS Rule 16 and the JAMS Optional Arbitration Appeal Procedure, and in accordance with the Expedited Procedures in those Rules." *Id.* at Section 16.D.iv.

13. Further, pursuant to the Agreement, the parties agreed that "[a]ny determination of the scope and applicability of the agreement to arbitrate,…shall be made solely by a federal court in the state in which the [Property] is located." *Id.* at Section 16.D.iii.

14. As it concerns the present dispute, the parties agreed that "each party shall have no more than two (2) days for presentation of direct evidence and for cross examination, exclusive of a site visit and reasonable opening and closing remarks" and that "upon written request of either party, the Arbitrator may modify these limitations and parameters as equitable." *See* **Exhibit A** at Section 16.D.iv.(d).(9) (p. 15).

15. The parties further agreed, pursuant to JAMS Rule 12(k), that a party could arrange a stenographic record of the final hearing, and in instances where there is an agreement to utilize the JAMS Optional Arbitration Appeal Procedure (as is the case here), the parties must "ensure

that a stenographic record or other record is made of the [final hearing] and shall share the cost of that record." True and correct copies of the JAMS Rules and JAMS Optional Arbitration Appeal Procedures are attached hereto as *Exhibits F and G*.

16. The parties further agreed that "Buyer and Meritage shall share equally in advancing JAMS and Arbitrator fees and costs required, and each party shall bear its own attorneys' fees and costs" and that "the prevailing party shall be awarded its reasonable attorneys' fees and costs to the greatest extent not otherwise contrary to state law". *See Exhibit A* at Section 16.D.iv.(c) (p. 14). And in the instance where the JAMS Optional Arbitration Appeal Procedure is invoked, "the parties shall equally share the JAMS and Appeal Arbitrator fees and costs of the Appeal". *Id.* at Section 16.D.iv.(e).(2).

17. Lastly, the parties agreed that the "[a]rbitrator shall apply the substantive law of the state in which the Home is located to resolve the claims made, without regard to conflict or choice of law rules." *Id.* at Section 16.D.iv.(g). Further, "[the Agreement] and the rights of the parties under the [Agreement] shall be governed by the laws of the state in which the [Property] is located." *Id.* at Section 18.D.

**C.    Defendants' Actions Giving Rise to this Matter**

18. Defendants demonstrate a habit of disregarding the terms of the Agreement. First, Defendants disregarded the mandatory arbitration provision set forth in Section 16.D. of the Agreement and filed the State Court Lawsuit. Defendants then reneged on their agreement with Meritage that the Arbitration would proceed *ad hoc* subject to contractual limitations and the JAMS Rules:



*See* **Exhibit D**.

19. Despite this stipulation, Defendants subsequently filed requests to the arbitrator to enter a proposed docket control in contravention of the JAMS Rules, arguing the JAMS Rules "are a poor fit for this arbitration proceeding." *See* **Exhibit H**. Shortly hereafter, Defendants filed their Motion for Determination Regarding Unconscionability of Arbitration Clause Provisions in the State Court Lawsuit, alleging certain provisions of the arbitration section (Section 16.D. of the Agreement) were "substantively unconscionable". *See* **Exhibit E**.

20. The specific provisions that Defendants take issue with are the following:

- Section 16.D.iv.(d).(9) – time limits for parties' case-in-chief at final hearing
- Section 16.D.iv.(d).(3), (5), (6) – discovery limitations
- JAMS Rule 22(k) – stenographic record of final hearing and cost sharing
- Section 16.D.iv.(e) – JAMS Optional Arbitration Appeal with respect to a final award in excess of $100,000
- Section 16.D.iv.(e).(1), (2) – cost sharing of an appeal pursuant to JAMS Optional Arbitration Appeal Procedure

**D.  Defendants' Claims of Substantive Unconscionability are Baseless in Law and in Fact**

21. Defendants' assertions of substantive unconscionability are baseless in law. Moreover, Defendants had ample opportunity to raise any questions or concerns with the terms now controverted—during either their 2015 negotiation of the purchase of the Property, or during

their 2022 negotiation of the arbitration proceedings prior to agreement on the arbitrator.  Meritage is entitled to a finding in its favor.

22. The parties agreed that the controlling law for an arbitrator or reviewing court is the law of the state where the Property is located, and the Property is in Texas.  *See* **Exhibit A** at Section 16.D.iv.(g) and at Section 18.D.  Moreover, "the Federal Arbitration Act allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions, including the law governing enforceability of a class-arbitration waiver."  *DIRECTTV, Inc. v. Imburgia*, 577 U.S. 47, 53–4 (2015).  Therefore, Texas law controls.

23. Texas law makes clear that each of the terms in dispute are in line with the general purpose of arbitration (to expedite dispute resolution)—and as such, all said terms are reasonable so long as they apply equally to the parties and the arbitrator maintains sufficient discretion in procedure for equitable adjustments.  The Texas Supreme Court established a high bar for substantive unconscionability. "[U]nder Texas law, as with any other contract, agreements to arbitrate are valid unless grounds exist at law or in equity for revocation of the agreement."  *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).  And "in general, a contract will be found unconscionable if it is grossly one-sided."  *Id.*  "Substantive unconscionability refers to whether the arbitration provision ensures preservation of the substantive rights and remedies of a litigant."  *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010); see also *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).  The *Poly* court noted further that unconscionability "is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise."  262 S.W.3d 337, 348 (Tex. 2008).  Moreover, the "party seeking to avoid arbitration … bears the burden of raising an affirmative defense to enforcement."  *Pilot Travel Centers, LLC v. McCray*,

416 S.W.3d 168, 177-8 (Tex.App.—Dallas,2013, no writ). Therefore, Defendants must show that the arbitration agreement at issue is oppressive or grossly one-sided.

24. Defendants have not and cannot cite authority supporting the proposition that a provision limiting time for each party's case-in-chief or the amount of discovery requests or depositions is "grossly one-sided" or would result in "oppression and unfair surprise." *See* **Exhibit E** at p.2. "Unconscionability principles are applied to prevent unfair surprise or oppression." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006). "The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position." *Id*. "[A] party who has the opportunity to read an arbitration agreement and signs it is charged with knowing its contents." *Id*. The baseline question regarding unconscionability of the arbitration clause then is whether the result of the arbitration clause is "a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." *Houston AN USA, LLC v. Shattenkirk*, 669 S.W.3d 392, 395 (Tex. 2023) (citing *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010)). None of the complained-of provisions are one-sided.

    a. *Discovery Limitations*

25. To the contrary, Texas law plainly establishes all related terms are valid and enforceable. "Limited discovery is one of arbitration's most distinctive features." *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 695 (Tex. 2008). Further, in deciding whether arbitration limitations on discovery are "one-sided", the Texas Supreme Court held "that arbitration's limits on discovery for both parties does not make it unconscionable" and that to hold otherwise "would nullify almost all arbitration agreements." *Id*. For example, in *Poly*, the agreement at issue contained the following terms:

> The 2002 agreement provides that each party may serve on the other a single set of twenty-five interrogatories (including sub-parts) and one set of twenty-five requests for production or inspection of documents or tangible things. Additionally, the agreement includes limitations alleged by [challenging litigant] to be unconscionable: (1) a limitation of each party to a single, six-hour deposition; (2) a prohibition on requests for admission; (3) a ban on inquiry into [proponent litigant's] finances; and (4) a confidentiality provision requiring confidentiality of the parties and their attorneys regarding all aspects of the arbitration.

262 S.W.3d at 357-8.

26. The *Poly* court deferred any determinations on the unconscionability of the terms to the arbitrator stating, "we cannot conclude that the evidence presented to the trial court compelled a finding that the discovery limitations were per se unconscionable", and that "the enforceability of limitations thereon, is a determination we believe best suited to the arbitrator as the case unfolds".

27. Moreover, in *Pilot Travel Centers, LLC v. McCray*, a case decided by the Dallas appellate court and which applied *Poly*, similar contract terms were considered by the court,[1] which likewise held the terms were not substantively unconscionable. 416 S.W.3d 168, 182. Specifically, relying on *Poly*, the *Pilot* court declared that arbitration agreements that applied discovery limitations equally to both party were not *per se* substantively unconscionable. *Id.* at 182 (citing *In re Poly-America*, 262 S.W.3d at 357–58). The appellate court also noted the ability to petition the arbitrator for additional discovery upon a showing of good cause indicated the discovery limitations were not prejudicial. *Id.*

28. The arbitration procedures Defendants take issue with here are likewise mutually applicable to both parties, and the arbitration agreement also allows for equitable adjustments to any limitations. *See* **Exhibit A** at Section 16.D.iv.(d).(9) (p. 15). The conclusion reached by the

---

[1] The arbitration agreement at issue in *Pilot* limited the parties to three fact witness depositions each (with no deposition lasting more than four hours); allowed up to forty interrogatories; and permitted requests for production and requests for admission upon the arbitrator's consent. *Pilot*, 416 S.W.3d at 181–82.

*Pilot* court is thus equally applicable to the case at bar: "Here, the terms of the arbitration agreement do not favor either party. [Claimants] have not established that the cost of arbitration or the discovery limitations contained in the arbitration agreement will prevent them from effectively presenting their…claims." 416 S.W.3d at 182. Applicable Texas case law establishes the arbitration terms contained in Section 16.D of the Agreement are undoubtedly valid and enforceable.

29. Moreover, Defendants cannot show that the Agreement's arbitration appeal right is so grossly one side as to be deemed unenforceable. The provision, like the other arbitration provisions at issue in this dispute, applies equally to Meritage and Defendants. Avoiding this obvious fact, Defendants argue that the $100,000 award threshold for an arbitration appeal is inferentially one-sided. But Defendants' logic suffers from a fatal flaw, as they assume Defendants would not view a $100,000 award as grossly unfair and commence an appeal on the hopes that the award would be overturned and a more lucrative award for Defendants issued instead.

   *b. Time Limitations*

30. Similarly, time limitations for the arbitration hearing are nationally accepted as standard. Although no Texas caselaw is precisely on point, regarding time limitations for arbitrations hearings, all relevant case law comes down to the same question—does the arbitrator have sufficient discretion to expand the time limitations if reasonably necessary? Because the answer here is yes, the time limitation provision should be declared valid and enforceable.

31. For instance, in *Leos v. Darden Restaurants, Inc.*, 158 Cal.Rptr.3d 384 (Cal.App.2nd 2013), former employees sued the former employer and challenged an arbitration provision in the related commercial insurance policy. There the term stated, "Typically, the arbitration hearing shall last no longer than two (2) days. Complex cases may require additional

time. The Employee and the Company representative will each have one (1) day to present their side of the dispute. The arbitrator may, for good cause, extend the duration of the hearing and adjust the timing of the presentations." *Id*. at 394–95. The former employees argued that "it does not allow adequate time for the duration of the hearing". *Id*. The appellate court disagreed, noting that the arbitration provisions' limitations on discovery and hearing length "are subject to change upon the arbitrator's determination of good cause, the limitations do not render the arbitration provision unconscionable." *Id*. at 396.

32. Similar to *Leos*, the arbitration agreement at issue in the present matter limits the presentation of a party's case-in-chief to two days (excluding any site visit and reasonable amount of time for opening and closing remarks). *See* **Exhibit A** at Section 16.D.iv.(d).(9). But also, as in *Leos*, the arbitration agreement grants the arbitration discretion in modifying the limitations: "Notwithstanding the foregoing, for good cause shown, upon written request of either party the Arbitrator may modify these limitations and parameters as equitable." *See* **Exhibit A** at Section 16.D.iv.(d). Therefore, the terms relating to time limitations for the arbitration are valid and enforceable.

    c. *Arbitration Appeal Rules*

33. Defendants cannot show that the arbitration appeal right as set forth in Section 16.D.iv.(e) is grossly one sided. Initially, it should be noted that two of the most widely used arbitration services in the United States, JAMS and the American Arbitration Association, both provide for optional appellate rules.[2] Given the length of time for the appellate process in state or federal court proceedings, at least one observer has commented that arbitration appeal rules are an

---

[2] *See* "JAMS Optional Appellate Procedure", JAMS, available at https://www.jamsadr.com/ files/Uploads/ Documents/JAMS-Rules/JAMS_Optional_Appeal_Procedures-2003.pdf ; "Optional Appellate Rules", American Arbitration Association, available at https://www.adr.org/sites/default/files/AAA-ICDR_Optional_Appellate_ Arbitration_Rules.pdf.

"underutilized tool."  Brent O.E. Clinkscale, Michael S. Cashman, Thomas M. Cull, *Nonjudicial Appeals of Arbitral Awards an Underutilized Tool in Alternative Dispute Resolution*, FED. LAW. 36, 39 (2016).  While no Texas case has addressed the issue of whether arbitration appeal rules are substantively unconscionable, case law from other jurisdictions exists for the proposition that a final ruling issued by an arbitration appeal panel is enforceable. *See, e.g., Hamilton v. Navient Solutions, LLC*, 2019 WL 633066, at *6 (S.D.N.Y., 2019).  Thus, one could extrapolate that arbitration appeal provisions are themselves valid and enforceable.

  *d.  Cost Sharing*

  34. Finally, the Agreement's arbitration cost sharing provisions are valid and enforceable.  Texas courts have established a high bar to nullifying cost sharing provisions in an arbitration agreement.  Recently, the Texas Supreme Court held in *Houston AN USA, LLC v. Shattenkirk* that the party opposing the arbitration provision carries the burden of proving that they "will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum".  The court noted the evidentiary standard required "presenting more than evidence of the 'risk' of incurring excessive costs", and instead required "specific evidence that a party will actually be charged excessive arbitration fees." *Houston AN USA, LLC v. Shattenkirk*, 669 S.W.3d 392, 395 (Tex. 2023) (citing *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892 (Tex. 2010)).  Here, Defendants have not and cannot make any such showing.  As such, the terms of the Agreement stipulating to shared arbitration costs are valid and enforceable.

  35. Accordingly, Meritage is entitled to a declaration that the arbitration agreement's terms controverted by Defendants are valid and enforceable.  Again, Defendants agreed to the terms not once—but twice.  Defendants are charged with knowledge of the terms, and Defendants' second agreement was with the assistance of counsel.  Case law on the matter is clear and leads to

no other determination but that the terms are valid and enforceable. Therefore, Meritage respectfully requests that this Court enter an order declaring the same.

## V.
## CAUSE OF ACTION – DECLARATORY JUDGMENT

36. Paragraphs 1 through 35 are incorporated herein and made a part of this claim.

37. Defendants challenged the enforceability of the arbitration provision (Section 16.D. of the Agreement) by filing a motion in the State Court Lawsuit seeking a determination that certain terms of the arbitration provision are unenforceable. Defendants ignored the express terms of the arbitration provision and submitted the issue of arbitrability to a state court when Section 16.D.iii of the Agreement exclusively reserves jurisdiction of arbitrability to a federal district court of competent jurisdiction.

38. Meritage is entitled to a Declaratory Judgment pursuant to 28 U.S.C. § 2201 that: (1) the Agreement's arbitration provision is enforceable; (2) time limits for the parties' case-in-chief at the final hearing are valid and enforceable; (3) the limits on discovery during the arbitration are valid and enforceable; (4) a record of the final hearing as permitted by Rule 22(k) of the JAMS Comprehensive Arbitration Rules & Procedures is valid and enforceable; (5) the right to invoke the JAMS Optional Arbitration Appeal Procedure if the final award is in excess of $100,000 is valid and enforceable; and (6) the cost sharing provisions for the stenographic record and the JAMS Optional Appeal procedure are valid and enforceable. Moreover, Meritage is entitled to reasonable attorneys' fees and court costs[3] as well as any other or different relief as the Court deems appropriate under the circumstances.

---

[3] *See* **Exhibit A** at Section 18.A. *See also* 28 U.S.C. ¶§2202; Tex. Civ. Prac. Rem. Code § 37.009.

# VI.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Meritage prays that this Court enter an order declaring all provisions in the Agreement relating to arbitration procedures, limitations, and appeals are valid and enforceable and for attorneys' fees, costs of court, and such further, other, or different relief, in law or in equity, as the Court deems appropriate.

Respectfully submitted,

**PECKAR & ABRAMSON, P.C.**

*/s/ Kimberly G. Altsuler*
Kimberly G. Altsuler
Texas Bar No: 000796656
Federal Bar No. 21838
kaltsuler@pecklaw.com
Cornelius F. "Lee" Banta, Jr.
Texas Bar No. 24101482
Federal Bar No. 3194304
lbanta@pecklaw.com
3050 Post Oak Boulevard, Suite 500
Houston, TX 77056
Telephone: (713) 568-1500
Facsimile: (713) 568-1490

*Attorneys for Plaintiffs*